## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **RHONDA BROWN,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil No. PJM 14-3454 |
| | * | |
| **OCWEN LOAN** | * | |
| **SERVICING, LLC, ET AL.** | * | |
| | * | |
| Defendants. | * | |

## <u>MEMORANDUM OPINION</u>

Rhonda Brown, acting *pro se*, has brought this action against Ocwen Loan Servicing, LLC ("Ocwen"), Wilmington Finance, Inc. ("Wilmington"), Deutsche Bank National Trust Company ("Deutsche Bank"), Morgan Stanley Mortgage Capital, Inc., Morgan Stanley ABS Capital 1 Inc. (collectively "Morgan Stanley Defendants"), Wells Fargo Bank N.A. ("Wells Fargo"), Mortgage Electronic Registration System ("MERS"), and 100 John Doe defendants.

Brown filed her Complaint while simultaneously contesting a foreclosure action with respect to a property she formerly owned. The Complaint, which is a variation on a form complaint circulated on the internet and tracks several cases filed before this member and other members of this Court,[1] asserts a variety of purported causes of action, including "lack of standing/wrongful foreclosure," fraudulent concealment, fraudulent inducement, intentional infliction of emotional distress, slander of title, quiet title, declaratory relief, rescission, and violations of the federal Truth-in-Lending Act ("TILA"), Home Ownership and Equity Protection Act ("HOEPA"), and Real Estate Settlement Procedures Act ("RESPA").

---

[1] *See, e.g.*, *Simmons v. Bank of America, N.A. et al.* (D. Md. Mar. 8, 2013); *Puryear et al v. Dynamic Capital Mortgage, Inc. et al.*, 12-3703 (D. Md. Dec. 18, 2012); *Somarriba et al v. Greenpoint Mortgage Funding, Inc. et al*, 13-0072 (D. Md. Jan. 8, 2013); *see also* http://certifiedforensicloanauditors.com/pdfs/SAMPLECOMPLAINT.pdf.

Brown filed a motion for a temporary restraining order, which the Court denied. ECF No. 5. Ocwen, Deutsche Bank, the Morgan Stanley Defendants, and MERS have filed Motions to Dismiss. ECF Nos. 8, 15, 16, 32. Brown has twice moved for leave to file an Amended Complaint, ECF Nos. 45, 48, which the Defendants oppose. Although Brown filed timely affidavits of service upon Wilmington and Wells Fargo, neither defendant has entered an appearance, and Brown has not moved for entry of default as to either defendant. In any event, the Court's review of Brown's affidavits of service suggests that service of process was defective as to these two defendants.[2]

## I.

Although the Complaint provides little factual detail, the Court has pieced together what appears to be the gist of the Complaint from various documents filed in this case and in the state court Foreclosure Action.[3]

On December 20, 2006, Brown entered into a mortgage agreement with Wilmington Finance with respect to property located at 7700 Quill Point Drive, Bowie, Maryland. The agreement refinanced a prior mortgage loan. ECF No. 8-3. The accompanying promissory Note was in the amount of $460,000, and contained a blank indorsement from Wilmington Finance. ECF No. 8-2. The Note was secured by a Deed of Trust that was assigned to MERS as a nominee for Wilmington Finance. ECF No. 8-3.

---

[2] The Court's review of Brown's affidavits of service on Wilmington and Wells Fargo indicates that she attempted to effect service pursuant to Md. Rule 2-121(a)(3), which provides for service by certified mail, but requires that the service be "Restricted Delivery--show to whom, date, address of delivery." However, Brown sent certified mail to addresses in California and New York, rather than to Maryland addresses of  Maryland resident agents authorized to accept service on the companies' behalf. While *somebody* apparently signed the certified mail receipts, there is no indication of those persons' identity, or whether such persons could validly accept service of process under the relevant Maryland and Federal rules.
[3] A court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment. *See Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 312 n.1 (D. Md.) *aff'd*, 584 F. App'x 135 (4th Cir. 2014) (taking judicial notice of state court docket entries). Here, the Court takes judicial notice of documents filed in the Foreclosure Action.

According to the Complaint, at some point, most likely in 2007, the Note was transferred to Deutsche Bank as trustee for a securitized pool of loans that the Complaint describes as "TRUST 2007-2." Compl. ¶ 29. The Court's review of the publicly available filings of the Securities and Exchange Commission indicates that "TRUST 2007-2" almost certainly refers to Morgan Stanley Home Equity Loan Trust 2007-2, for which the Morgan Stanley Defendants served as sponsor and depositor, Deutsche Bank as the trustee, and Wells Fargo as the master servicer.[4]

In February 2013, MERS, acting as nominee for Wilmington Finance, assigned the Deed of Trust to Deutsche Bank, possibly in anticipation of foreclosure proceedings. ECF No. 8-4. By this point, Ocwen was the servicer of the loan.

Brown presumably made payments on the loan from 2006 until 2010, but, according to a Notice of Intent to Foreclose dated July 31, 2013 and filed in the Foreclosure Proceeding, her last loan payment was received on March 30, 2010.

At some point during this period, Ocwen appears to have executed a Substitution of Trustee document that appointed several attorneys from the BWW Law Group, LLC ("BWW") as Deutsche Bank's substitute trustees. The Court's review of the public Circuit Court docket indicates that on November 15, 2013, BWW filed a foreclosure action in the Circuit Court of Prince George's County, Maryland. By February 18, 2014, BWW had served Brown, and on June 26, 2014, the Circuit Court ordered that Deutsche Bank could advertise the sale. The sale was scheduled for September 3, 2014. ECF No. 8-10. The day before the sale, Brown filed what was styled as a Rule 14-211 Motion to Stay Foreclosure Sale and Dismissal of Action. ECF No. 8-8. In it, she argued that BWW and Ocwen lacked standing to proceed with the foreclosure, that various documents were fraudulent, and that process had been insufficient. The Circuit Court

---

[4] *See* http://www.sec.gov/Archives/edgar/data/1030442/000091412107000899/ms8006321-424b5.txt.

denied Brown's Motion the next day, because it was untimely, because it failed to state a valid defense or argument, and because it failed to state a factual or legal basis for relief under Md. Rule 14-211(a)(3)(B). Deutsche Bank purchased the property that day at the foreclosure sale for $363,000. ECF No. 8-11.

On September 12, 2014, Brown filed a Second Motion to Stay the Foreclosure Sale in the Foreclosure Action. The Circuit Court denied this second motion on September 22, 2014, and ordered the foreclosure to continue in due course. On November 22, 2014, Brown filed exceptions to the sale, and about a week later, filed this action in this Court.

The Court's review of the Circuit Court Docket indicates that since that time, the Circuit Court has overruled Brown's exceptions to the foreclosure sale, and on March 3, 2015, issued an order ratifying the sale. Although Brown noticed an appeal to the Court of Special Appeals, on May 14, 2015, the Circuit Court also issued an order ratifying the report of the auditor, and closed the case.

## II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

While federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012); *see also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010) (observing the Fourth Circuit considers liberal construction of a complaint is particularly warranted where a *pro se* litigant alleges civil rights violations). The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986)).

Federal Rule of Civil Procedure 15(a)(2) instructs that the Court should freely give leave to amend a pleading when justice so requires. A motion to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). If an amended complaint could not withstand a motion to dismiss, a motion to amend should be denied as futile. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

**A.**

Brown asserts four claims for relief that effectively seek to undo the Foreclosure Action by asserting that none of the Defendants is the valid holder of the note, and therefore none has a claim to the property or any right to foreclose.

The Court rejects these claims out of hand, all barred by the doctrine of *res judicata.*

In Count One (Lack of Standing/Wrongful Foreclosure), Brown contends that Defendants "do not have the right to foreclose on the Property because Defendants . . . have failed to perfect any security interest in the Property [and] [t]hus, the purported power of sale . . . no longer applies [and] Defendants . . . do not have the right to foreclose on the property." Compl.  ¶ 56. She submits that the only parties who have standing to foreclose are the holders of the Note, who she contends are the "certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains." *Id*. ¶ 57. She seeks damages and injunctive relief on this basis.[5] In Count Eleven (Wrongful Foreclosure), she similarly asserts that the foreclosure was wrongful because there existed no secured party, and asks the Court to set aside the foreclosure and award her the full value of the property in the amount of $411,000.

In Count Six (Quiet Title), Brown asserts that none of the Defendants holds a perfected and secured claim in the property, or claims some interest in the property adverse to Brown's title, and that such claims constitute a cloud on Brown's title. *Id*. ¶¶ 113-115. Brown requests a decree permanently enjoining Defendants from asserting any adverse claim to Brown's title to the property, and damages. *Id*. ¶¶ 115-117.

---

[5] In her Second Proposed Amended Complaint, Brown restyles this count as "Illegal Foreclosure" and suggests that the foreclosure violated 18 U.S.C. § 1001. Of course, Title 18 is the Crimes and Criminal Procedure Title of the United States Code, and private citizens do not have the right to institute a criminal prosecution or enforce criminal statutes.

In Count Seven (Declaratory Relief), Brown "requests a judicial determination of the rights, obligations, and interest of the parties with regard to the Property," including a determination as to the "validity of the Trust Deeds as of the date the Notes were assigned," and "a determination of whether any Defendant has authority to foreclose on the Property." *Id.* ¶¶ 118-129.

The doctrine of *res judicata*—known in some courts as claim preclusion or direct estoppel—forbids the relitigation of a claim that was decided or could have been decided in a prior suit. *See Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 426 (D. Md. 2012). In Maryland[6] a subsequent claim is barred by the doctrine of res judicata when: (1) the parties in the present litigation are the same or in privity with the parties to the earlier suit; (2) the second suit presents the same cause of action or claim as the first, or the claim could have been raised in the prior suit but was not; and (3) the prior adjudication was a final judgment on the merits by a court of competent jurisdiction. *See Poku v. Fed. Deposit Ins. Corp. as Receiver for Washington Mu. Bank F.A.*, 2011 WL 334680, at *4 (D. Md. Jan. 31, 2011) (citing R & D 2001, LLC v. Rice, 938 A.2d 839, 848 (Md. 2008)).

The unassailable, fully dispositive fact in this case is that BWW foreclosed upon Brown. BWW acted as substitute trustees for Deutsche Bank, and Ocwen serviced the loan on Deutsche Bank's behalf.[7] Accordingly, the parties in both cases were the same or in privity. In the

---

[6] Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of state courts. Section 1738 does not allow federal courts to employ their own preclusion rules in determining the preclusive effect of state judgments. "Rather, it [. . . ] commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982).
[7] Although the Morgan Stanley Defendants and MERS are not in privity with BWW, Deutsche Bank, and Ocwen, and therefore cannot establish the affirmative defense of res judicata, none of these four defendants was a party to the foreclosure case, nor did they have any interest in the deed of trust or the note at the time of the foreclosure, nor is there any indication that they ever claimed an interest in the property after the property was securitized. Accordingly, to the extent that Brown asserts purported "Lack of Standing/Wrongful Foreclosure" and Quiet Title claims against these defendants, Brown fails to state a plausible claim upon which relief can be granted. *See Wheatley*, 2014 WL 2452606, at *5.

Foreclosure Action, Brown filed a "Rule 14-211 Motion to Stay Foreclosure Sale and Dismissal of Action," in which she argued that BWW and Ocwen lacked standing to proceed with the foreclosure and that various documents were fraudulent. The Circuit Court denied her Motion. Accordingly, this suit presents the same claim as Brown presented in the Foreclosure Action. Finally, the Circuit Court overruled Brown's exceptions to the foreclosure sale, issued an order ratifying the sale, and closed the case pending appeal.[8] The Circuit Court's dismissal of Brown's standing argument was a final judgment on the merits. As a result, Counts One, Six, and Seven are barred by res judicata.

Additionally, to the extent that Brown seeks to enjoin the foreclosure, or seek declaratory relief establishing that the foreclosure is invalid, her claims are further barred by the Anti-Injunction Act. Under the Anti–Injunction Act, 22 U.S.C. § 2283, this Court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Where the Anti–Injunction Act bars an injunction, it also bars the issuance of a declaratory judgment that would have the same effect as an injunction. *See Tucker v. Specialized Loan Servicing, LLC*, 2015 WL 452285, at *2 (D. Md. Feb. 3, 2015) (citing *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.8 (4th Cir.2004). For example, if a plaintiff requests a declaration that the plaintiff's mortgage and note are unenforceable, the request preempts the foreclosure and has the same effect as a request for an injunction to prevent foreclosure; both result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. *Id.* (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)).

---

[8] Maryland courts have held that pendency of an appeal does not affect the finality of a judgment for *res judicata* purposes. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 525 (2004).

Counts One, Six, Seven, and Eleven are **DISMISSED WITH PREJUDICE**.

**B.**

In Count Two (Fraud in the Concealment), Brown alleges that "Defendants concealed the fact that the loans [sic] were securitized" as well as the nature of such securitization in order to induce Brown to enter into the "loans," and that Defendants "knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans [sic]." Compl. ¶¶ 75-76. In Count Three (Fraud in the Inducement), she alleges that Defendants "intentionally misrepresented to Plaintiff [that] those Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust" and misrepresented that they are the 'holder and owner' of the Note and the beneficiary of the Deed of Trust" and their failure to "disclose the material terms of the transaction induced [her] to enter into the loans[]." *Id*. ¶¶ 84-86. Such misrepresentations were made to "induce the Plaintiff to rely on the misrepresentations and foreclosure on the Property." *Id*. ¶ 87. These claims are also baseless.

To sustain a claim for fraud in the inducement under Maryland law, a plaintiff must allege "(1) that the defendant made a false statement of material fact the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Carroll Co. v. Sherwin-Williams Co.*, 848 F. Supp. 2d 557, 566 (D. Md. 2012) (citing *VF Corp. v. Wrexham Aviation Corp.*, 715 A.2d 188, 193 (Md. 1998)).

To support a claim for fraudulent concealment a plaintiff must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to

disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff

took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a

result of the defendant's concealment." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md.

1999).

Brown has failed to "state with particularity the circumstances constituting fraud" as

required by Federal Rule of Civil Procedure 9(b), namely the time, place, and contents of any

false representations or the identities of the wrongdoers, in support of her claims that Defendants

fraudulently concealed or induced her. *See Harrison v. Westinghouse Savannah River Co.,* 176

F.3d 776, 784 (4th Cir.1999) (noting that the "'circumstances' required to be pled with

particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as

well as the identity of the person making the misrepresentation and what he obtained thereby.'")

(quoting 5 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* §

1297, at 590 (2d ed.1990)). Nor obviously is she able to do so.

Counts Two and Three are **DISMISSED WITH PREJUDICE**.

## C.

In Count Four (Intentional Infliction of Emotional Distress), Brown alleges that

Defendants' conduct has "threatened [her] with the loss the Property" and that they

"intentionally, knowingly and recklessly misrepresented to the Plaintiff [that] those Defendants

were entitled to exercise the power of sale provision" with the "specific intent of inflicting

emotional distress on the Plaintiff."  Compl. ¶¶ 92, 94, 96.

Under Maryland law, a claim of intentional infliction of emotional distress has four

elements: (1) the conduct must be intentional or reckless; (2 the conduct must be extreme and

outrageous; (3) there must be a causal connection between the wrongful conduct and the

emotional distress; and (4) the emotional distress must be severe. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000) (quoting *Harris v. Jones,* 380 A.2d 611, 614 (1977)).

Brown has not, nor could she conceivably set out the "extreme and outrageous" conduct by Defendants, of the sort required for the applicability of this extraordinary tort. Her allegations relating to intentional infliction of emotional distress fail to state a claim for which relief can be granted.

Count Four is **DISMISSED WITH PREJUDICE**.

## D.

In Count Five (Slander of Title), Brown claims that Defendants "disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of" documents including "the Notice of Default, Notice of Trustee's Sale, and Trustee's Deed." Compl. ¶ 103. Brown further alleges that"[a]t the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive her of the exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means." Compl. ¶ 108.

Under Maryland law, a cause of action for "slander of title," or "injurious falsehood,"

> may consist of the publication of matter derogatory to the plaintiff's title to his property . . . of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage. The cause of action founded upon it resembles that for defamation, but differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases. The falsehood must be communicated to a third person, since the tort consists of interference with the relation with such persons. But the plaintiff must plead and prove not only the publication and its disparaging innuendo, as in defamation, but something more. There is no presumption, as in the case of personal slander, that the disparaging statement is false, and the plaintiff must establish its falsity as a part of his cause of action. Although it has been contended that there is no essential reason against liability where even the

truth is published for the purpose of doing harm, the policy of the courts has been
to encourage the publication of the truth, regardless of motive.

'In addition, the plaintiff must prove in all cases that the publication has played a
material and substantial part in inducing others not to deal with him, and that as a
result he has suffered special damage. The analogy is thus to the kind of personal
slander which does not charge a crime or loathsome disease, or defame him in his
business, profession, or office, and so is not actionable unless damage is proved.'

*Beane v. McMullen,* 291 A.2d 37, 49 (Md.1972) (quoting Prosser, *Law of Torts,* at 919–922 (4th

ed. 1971)).

Apart from the fact that Brown fails to allege what publication she believes is false,

which of one or more of Defendants created the supposedly false publication, or whether such

publication played "a material and substantial part" in causing "special damage" to her, the

overwhelming fact, of course, is that the Deed of Trust gives the mortgagee or assignee the right

to foreclose on the Property.  As a result, any Notice of Default or Notice of Foreclosure sent to

Brown could hardly be false.

Count Five is **DISMISSED WITH PREJUDICE**.

**E.**

Count Eight (Violation of TILA and HOEPA, 15 U.S.C. § 1601, *et. seq.*) and Count Nine

(Violation of RESPA, 1 U.S.C. § 2601, *et. seq.*) both fail as a matter of law.  All actions for

damages under TILA must be filed "within one year from the date of the occurrence of the

violation." 15 U.S.C. § 1640(e).  The "'date of the occurrence of the violation' is the date on

which the borrower accepts the creditor's extension of credit."  *Moseley v. Countrywide Home*

*Loans, Inc.*, 2010 WL 4484566 at *2 (E.D.N.C. Oct. 26, 2010).  Similarly, a RESPA claim for

violation of §§ 2607 or 2608, which are the only sections of RESPA that may impose civil

liability for actions taking place during the loan origination process, must be brought "within 1

year . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614.

Brown alleges that Defendants are liable for violations that occurred during the origination of her loan on December 20, 2006.  The statute of limitations for any alleged TILA or RESPA violations therefore expired on December 20, 2007.  Brown filed her Complaint on November 3, 2014, more than 7 years later.  Counts Eight and Nine are there time-barred, and are **DISMISSED WITH PREJUDICE**.

## F.

Brown's Second Proposed Amended Complaint contains a new RESPA claim that appears to allege that Defendants failed to timely respond to Brown's qualified written requests ("QWR") sent on March 2, 2015 and March 25, 2015. She alleges that although Ocwen, Deutsche Bank, and MERS's responses were dated April 8, 2015 (and would therefore appear to be timely under 12 U.S.C. § 2605), she received said responses on May 11, 2015. The Court does not know what to make of such allegation, given that Brown filed this allegation in her Second Amended Complaint on April 17, 2015, more than three weeks before May 11, 2015.  At any rate, Brown ultimately fails to state a claim for relief because the only actual damages that she pleads as a result of the alleged violation is "$411,000 for Plaintiffs home that was foreclosed upon without the necessary documents that Defendants failed to provide." ECF No. 48-18, at 38. Her RESPA actual damages claim therefore seeks nothing less than to unravel the final judgment against her in the foreclosure action, and is plainly barred by *res judicata*.[9]  Nor, in any case, does she plead any facts suggesting a pattern or practice of noncompliance with RESPA, which is required in order to recover the statutory damages she seeks.  Accordingly, the RESPA claim contained in Brown's Second Proposed Amended Complaint fails to state claim

---

[9] The Court rejects any argument that, by reason of RESPA, Brown had one year after the foreclosure was finalized to seek, in effect, to undo the foreclosure. Whatever RESPA may mean, it cannot sensibly mean that.

upon which relief could be granted, is futile, and her Motions for Leave to File an Amended Complaint will be **DENIED WITH PREJUDICE**.

**G.**

In Count Ten (Rescission), Brown claims an entitlement to a rescission of the loan in its entirety for a number of reasons, including TILA violations, fraudulent concealment and inducement, fraudulent transfers of the note and the deed of trust, and public policy grounds. *Id.* ¶ 148. The foreclosure transaction is signed, sealed, and delivered. It is *res judicata*, for all the reasons stated previously.

**III.**

For the foregoing reasons, the Motions to Dismiss the Complaint filed by Deutsche Bank, Ocwen, MERS, and the Morgan Stanley Defendants, ECF Nos. 8, 16, 32, are **GRANTED**. Counts One through Eleven of the Complaint are **DISMISSED WITH PREJUDICE** as to Deutsche Bank, Ocwen, MERS, and the Morgan Stanley Defendants. Brown's Motion for a Temporary Restraining Order, Preliminary Injunction, and Declaratory Relief, ECF No. 2, is **DENIED**. Brown's Motions for Leave to File Amended Complaint, ECF No. 45, 48, are **DENIED WITH PREJUDICE**. Brown's Motion for Mediation, ECF No. 19, is **MOOT**. Brown is **ORDERED** to **SHOW CAUSE** within thirty (30) days as to why the Complaint should not be dismissed as to Wilmington and Wells Fargo for failure to effect service, <u>and</u> why the Complaint should not be dismissed with prejudice as to Wilmington and Wells Fargo for all the reasons set forth in this Memorandum Opinion.

A separate Order will **ISSUE**.

*/s/*
_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 20, 2015**